## PAUL ZELLER *v.* ALFRED MARK
### (5789)

DUPONT, C. J., BORDEN and STOUGHTON, Js.

Argued February 10—decision released June 14, 1988

*Charles F. Brower,* for the appellant (plaintiff).

*John A. Blazi,* for the appellee (defendant).

BORDEN, J. The plaintiff brought this action alleging both slander and libel. The trial court granted the defendant's motion to strike the one count complaint "to the extent that [it] purports to allege a cause of action sounding in slander"[1] and rendered a partial judgment in favor of the defendant "as to the allegations of slander in the complaint."[2] The sole issue is

---

[1] The defendant moved to strike, and the trial court granted the motion and rendered judgment as to only *part* of the one count complaint. Nowhere in the record is it clear exactly which allegations in the complaint were stricken. We note that this procedure may encourage the parties on appeal to engage in various forms of revisionist history upon the silent record and makes our task of appellate review somewhat more difficult. Although the plaintiff asks us to determine the extent to which his complaint alleges libel, we decline to do so. We ordinarily limit our appellate review to the issues decided by the trial court. See, e.g., *Kimbrell* v. *Rossitto,* 6 Conn. App. 638, 648–49, 507 A.2d 120 (1986).

[2] We must first consider whether the partial judgment rendered by the trial court is a final judgment for purposes of appellate review. With the consent of the parties, the trial court rendered the partial judgment pursuant to Practice Book § 4002 (d), after determining that the issues involved in the slander allegations were of such significance to the determination of the outcome of the case that the delay incident to appeal would be justified.

Practice Book § 157 provides that a trial court "in those instances where an *entire* complaint . . . has been stricken . . . may upon motion enter judgment against [the party whose pleading has been stricken]." (Emphasis added.) Practice Book § 4002 (d) supplements this authority of the trial court, permitting it to render judgment upon stricken counts "where fewer than all of the counts of a complaint . . . have been . . . stricken . . . ." Although the single count nature of this slander and libel action prevents the court's striking of the slander allegations from neatly fitting the requirements of § 4002 (d), we conclude that the trial court was authorized to render partial judgment on this basis, and we treat the partial judgment as a final judgment for purposes of our appellate jurisdiction pursuant to Practice Book § 4002 (a) and (e). In reaching this conclusion, we note that throughout the proceedings in the trial court the parties and the court recognized that the one count complaint asserted two separate theories of recovery—one sounding in slander and one sounding in libel—and consistently treated it as doing so without the necessity of separate counts.

whether the complaint adequately alleged slander per se.[3] We find no error.

The complaint alleged the following facts relevant to this appeal. The plaintiff is a Torrington police officer. On January 2, 1986, while on duty, the plaintiff stopped the defendant's car after he observed it weave over the center line of the highway. The plaintiff then interrogated and examined the defendant for the purpose of determining whether the defendant was under the influence of alcohol. Soon thereafter, the defendant stated orally to the plaintiff's superior "that the plaintiff had been rude and obnoxious, that the plaintiff had acted irrationally and that the plaintiff was intoxicated, and demanded that the plaintiff be given a sobriety test and that he be given an eye test as he 'obviously had sight problems.' " Thereafter, the defendant made oral statements to representatives of the local newspapers resulting in the publication of several articles in which the defendant stated "that he had been 'mistreated' by the plaintiff, that the plaintiff had 'grabbed him by the arms and made him stay in the cold' at the time of the incident in question, that the plaintiff was [a] 'menace,' and that 'that's why I will pursue this. It could have been my son or yours. If it had been a younger person without self control, one or both of them could have ended up in the hospital.' "[4] The plaintiff alleged that all of these statements by the defendant were false. The complaint contained no allegation of special damages.

---

[3] The plaintiff raises arguments in his brief concerning his libel claim. Since the trial court was not called upon to evaluate the libel allegations in the complaint and did not render judgment with respect to those claims, we do not address these arguments. See footnote 1, supra.

[4] There was one additional allegedly slanderous statement made by the defendant to the news media on which the plaintiff relies in his argument to this court. That statement is: "I couldn't sleep at night knowing that if I didn't do something, someone is going to be permanently injured." While the other allegedly slanderous statements made to the news media are

" 'It is axiomatic that, in passing on a motion to strike based on a claim of failure to state a cause of action, we must take the facts alleged favorably to the pleader and view those facts in a broad fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly probable under them.' " *Dennison* v. *Klotz*, 12 Conn. App. 570, 576–77, 532 A.2d 1311 (1987), quoting *Schmidt* v. *Yardney Electric Corporation*, 4 Conn. App. 69, 74, 492 A.2d 512 (1985).

"Having admittedly alleged . . . no special damages, the plaintiff here is limited to a recovery of general damages on a showing that the utterance was slanderous per se." *Moriarty* v. *Lippe*, 162 Conn. 371, 382–83, 294 A.2d 326 (1972). There are several categories of slander which are actionable per se. See id.,

---

quoted in paragraph 9 of the complaint, this statement appears *only* in the newspaper articles attached to the complaint. We note that the complaint refers to these articles but does not formally incorporate them by reference. Moreover, the plaintiff's reference to this statement in his opposition to the motion to strike was not as part of the complaint but rather as part of an admission by the defendant in response to a request for admission pursuant to Practice Book § 238. The plaintiff's reliance on an admission by the defendant rather than an allegation of the complaint was not proper in the context of the trial court's consideration of the motion to strike, where all "facts . . . must be taken from the complaint"; *Kilbride* v. *Dushkin Publishing Group, Inc.*, 186 Conn. 718, 719, 443 A.2d 922 (1982); and where the parties may not rely on "affirmative factual assertions which would only be proved by evidence." *State* v. *Bashura*, 37 Conn. Sup. 745, 748, 436 A.2d 785 (1981).

We do not consider this statement, which was neither present nor properly incorporated into the complaint, to be part of the record on appeal because the plaintiff did not properly rely on it at the time he opposed the defendant's motion to strike in the trial court. To do otherwise would amount to an improper variation on that "Kafkaesque academic test" by which a trial judge "may be determined on appeal to have failed because of questions never asked of him or issues never clearly presented to him." *State* v. *Cosby*, 6 Conn. App. 164, 174, 504 A.2d 1071 (1986). "Because the theories raised at trial did not include the one the plaintiff now attempts to raise, we do not consider this ground of error." *Kimbrell* v. *Rossitto*, 6 Conn. App. 638, 649, 507 A.2d 120 (1986).

383–84; D. Wright & J. FitzGerald, Connecticut Law of Torts (2d Ed.) § 147. The plaintiff has pursued this case on the theory that only one of those categories is applicable, namely, "that a [slander] is actionable per se if it charges improper conduct or lack of skill or integrity in one's profession or business and is of such a nature that it is calculated to cause injury to one in his profession or business." *Moriarty* v. *Lippe,* supra, 384; see also *Miles* v. *Perry,* 11 Conn. App. 584, 602, 529 A.2d 199 (1987). Under this category, spoken words "are not slanderous per se if they charge no more than specific acts, unless those acts are so charged as to amount to an allegation of general incompetence or lack of integrity." *Proto* v. *Bridgeport Herald Corporation,* 136 Conn. 557, 567, 72 A.2d 820 (1950).

In concluding that the allegedly slanderous statements contained in the plaintiff's complaint are not actionable per se, we are guided by the cases of *Moriarty* v. *Lippe,* supra, and *Camp* v. *Martin,* 23 Conn. 86 (1854). *Moriarty* v. *Lippe,* supra, involved a dispute over a parking citation which escalated to a breach of peace during and after which the defendant-citizen stated to others that the plaintiff, a police officer, had used excessive force upon her, including a statement to the plaintiff's superior officer that the defendant was surprised that the plaintiff did not take out his gun and shoot and kill her during the incident, and calling him a "clown," "big fat ape," "smart aleck," "big fat oaf," and "stupid son of a bitch." Id., 374–76, 384–85. The court concluded that the charges of police misconduct were insufficient to constitute slander per se because "[s]uch utterances do not charge more than specific acts and, therefore, cannot, as a matter of law, be slander actionable per se." Id., 384–85. The court also concluded that epithets used by the defendant "were here merely gross and vulgar expressions of abuse. The general rule has long been that such words of general

abuse, regardless of how rude, uncouth or vexatious are not slanderous per se . . . ." Id., 385.

*Camp* v. *Martin,* supra, involved statements regarding the plaintiff doctor's treatment of a patient. The allegedly slanderous statements were: " 'If Dr. C. had continued to treat her, [the patient] would have been in her grave before this time' " and " 'Your treatment of her was rascally.' " Id., 87. The court concluded that the first statement was not actionable in the absence of proof of special damages because it was "spoken only with reference to the particular case in which it is stated the plaintiff was employed, and that [it did] not necessarily, naturally or fairly, impute to him general ignorance or unskillfulness, or corruption, or a want of integrity . . . ." Id., 92. The court then concluded that the use of the word "rascally" to describe the doctor was so connected to the other statement, which clearly related to a specific act, that it could not be extended to mean a charge of general incompetence.

The trial court here correctly concluded that the allegations in the complaint fail to state a cause of action. All of the allegedly slanderous statements do no more than charge specific acts, namely the alleged conduct and condition of the plaintiff on January 2, 1986. Even reading the complaint in a broad fashion, we do not read the allegation that the defendant called the plaintiff a "menace" to be a charge of general incompetence or lack of integrity. We note that the noun "menace," when used to refer to a person, can mean either "a person whose actions or idiosyncrasies cause intense annoyance or discomfiture" or "someone . . . that represents a threat." Webster, Third New International Dictionary. As alleged in the complaint, the defendant never stated precisely how the plaintiff was a menace. Under circumstances where the words used are susceptible of more than one meaning and no other facts are present to suggest that the broader, more

harmful meaning was intended or conveyed to others in the allegedly slanderous statement, we must read the defendant's use of the word "menace" in the context of the other allegedly slanderous statements. That process leads us to conclude that this statement did no more than refer to and charge a specific act.

"That expression, as connected with the [other] words, certainly implies, that there was mismanagement of some kind, on the part of the plaintiff, in [that incident]. But it does not appear, from the language used . . . whether [the mismanagement] consisted of [misconduct in that incident alone] or of some other conduct, which would indicate a want of integrity or general capacity. If the words spoken imputed to the plaintiff the former only, they would not, in our opinion, be slanderous; and we do not think that we should be warranted in giving them a more extended meaning." *Camp* v. *Martin,* supra, 93.

There is no error.

In this opinion the other judges concurred.